THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN THE MATTER OF A CRIMINAL
COMPLAINT AGAINST
KERWIN OMAR MARTIN

18-mj-2085 DPR

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, James D. Holdman Jr., being first duly sworn, do hereby depose and state that:

1. This affiant is a Special Agent (SA) with United States Immigration and Customs Enforcement (ICE) Office of Homeland Security Investigations (HSI) in Springfield, Missouri. This affiant has been employed with ICE/HSI since June 2003. This affiant has been employed in the field of law enforcement since January 1989, including duties as a deputy sheriff in Washington County, Missouri, and a criminal investigator for the State of Missouri.

2. As part of this affiant's duties with ICE/HSI, this affiant investigates criminal violations under Title 18 of the United States Code, including offenses under Section 113 involving assaults on the territorial jurisdiction of the United States.

3. This affiant has conducted operations relating to the exploitation of children and adults in Costa Rica, the border area of the United States and Mexico, and the Philippines. This affiant has instructed classes on sexual exploitation of children, interviewing, evidence collection, case studies, and undercover operations to law enforcement agencies within the United States, including six national conferences, as well as to law enforcement located in the following foreign countries:

    a. Cambodian National Police in Phnom Penh and Siem Reap;

    b. International Law Enforcement Academy (ILEA) in El Salvador;

    c. Moroccan Police Academy in Kenitra;

1

d. Ontario Canada Provincial Police in Niagara Falls, Canada; and

    e. Royal Canadian Mounted Police Headquarters, Ottawa, Canada.

4. The statements in this affidavit are based on personal observations, training and experience, investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, this affiant has not included each and every fact known to me concerning this investigation. The affiant has set forth the facts necessary to establish probable cause to believe that Kerwin Omar Martin has violated 18 U.S.C. § 113(a)(8), that is, assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate on the territorial jurisdiction of the United States.

## STATUTORY AUTHORITY

5. 18 U.S.C. § 113(a)(8) prohibits a person from assaulting a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate on the territorial jurisdiction of the United States.

## DEFINITIONS

6. The following definitions apply to this Affidavit and its Attachments:

    a. The terms "dating partner" and "spouse or intimate partner" have the meanings given those terms in 18 U.S.C. § 2266 including:

        1. A spouse or former spouse of the abuser, a person who shares a child in common with the abuser, and a person who cohabits or has cohabited as a spouse with the abuser; or

        2. A person who is or has been in a social relationship of a romantic or intimate nature with the abuser, as determined by the length of the relationship, the type

2

of relationship, and the frequency of interaction between the persons involved in the relationship

3. Any other person similarly situated to a spouse who is protected by the domestic or family violence laws of the State or tribal jurisdiction in which the injury occurred or where the victim resides.

b. The term "strangling" means intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck, regardless of whether that conduct results in any visible injury or whether there is any intent to kill or protractedly injure the victim; and

c. The term "suffocating" means intentionally, knowingly, or recklessly impeding the normal breathing of a person by covering the mouth of the person, the nose of the person, or both, regardless of whether that conduct results in any visible injury or whether there is any intent to kill or protractedly injure the victim.

d. The term "special maritime and territorial jurisdiction of the United States" includes lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction of the United States, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the land is situated, for the building of a fort, arsenal, dock, or other needed building

**PROBABLE CAUSE**

7. On October 9, 2018, Kerwin Omar Martin (hereinafter "Martin") sent text messages to his ex-wife, M.M. Both Martin and M.M. are out of active duty service in the United States Army and are currently employed in the civil service at Fort Leonard Wood Army Base in Pulaski County, Missouri. Martin and M.M. also reside on base. Martin and M.M. were married for approximately

3

eight years and their divorce was finalized March 23, 2018, in the Pulaski County, Missouri, Circuit Court. Martin and M.M. have one child together, 10-year-old John Doe. Both Martin and M.M. reside on base at Fort Leonard Wood.

8. On October 9, 2018, at 10:15 a.m., Martin told M.M. that he wanted to talk to her and M.M.'s friend, S.P., together. As the day went on, Martin continued to send text messages to M.M., and eventually Martin sent sexually explicit images of M.M. that were taken during their marriage, threatening to send them to her boss and post them all over the base.

9. Later that day, Martin called M.M. on the phone while she was at her residence on base at Fort Leonard Wood. The conversation lasted approximately 88 minutes. M.M. believed the conversation ended with Martin in a more calm state. M.M., S.P., and John Doe sat down for dinner after the phone call ended.

10. While eating dinner, Martin called M.M. again asking her if she had received his text messages. Martin had sent a series of text messages starting at 7:34 p.m., making sexually crude comments to M.M. Martin also stated, "I'm going to quit [M.M.]. I'm getting a little down. I'm going to shoot off a few rounds in my 22. You may hear them in a few. Yessss!!!"

11. While on the phone, Martin continued to make sexually crude comments. M.M. told Martin that the conversation was inappropriate and that she would talk to him the next day. M.M. also told him that if he came over she would call the Military Police (MP). While still on the phone with Martin, M.M., S.P., and John Doe heard the living room window smash. Martin then climbed through the window. M.M. called 911 and told John Doe and S.P. to run out the back door. M.M. also ran out the back door. Martin eventually followed them out the back door, and confronted M.M. and S.P. in the backyard. Martin then began to assault S.P. Martin punched S.P. multiple times on her face. M.M. tried to get Martin off S.P. by hitting him with her house phone. Martin

then grabbed M.M. by the hair and pushed her away. S.P. then threw M.M.'s cell phone at Martin's head. Martin then took S.P. to the ground and continued to assault her. M.M. was able to push Martin off S.P.

12. Martin stated he was done and he just wanted his phone. Martin then grabbed M.M. by the sides of her head and told her that he thought she was better than that, and asked her why was she sleeping with the enemy. Martin then let go and started looking for his phone. M.M. told him it was not in her house and tried to shut the door. Martin then grabbed M.M. by the throat and said, "Do you want to die today M.M.? Do you want to die?" M.M. responded, "No, I don't want to, Kerwin." M.M. then blacked out/lost consciousness. M.M. next remembered Martin on top of her asking where his phone was. M.M. went to the front of the residence and told him it was outside. Martin accused M.M. of lying to him so she could get him out of the house. At that point, the MP's vehicle pulled up to the residence. Martin pushed M.M. up against the wall and punched her in the forehead.

13. MP Sergeant David Carlson was dispatched to M.M.'s residence in response to her 911 call. As Sergeant Carlson approached the residence, he observed M.M. pacing back and forth in the living room. As he exited his vehicle, Sergeant Carlson could hear loud yelling from Martin, but he was unable to discern what Martin was saying. As Sergeant Carlson approached the open front door, he observed Martin holding M.M. against the wall and punching her in the head and face. Sergeant Carlson entered the residence and commanded Martin to let M.M. go and to get on the ground. Martin did not comply and drew his fist back again to strike M.M.. Sergeant Carlson drew his Taser and once again commanded Martin to let M.M. go and get to the ground. Martin let M.M. go and pushed her to the side. Martin then raised his hands and stated, "Alright, I'm done, I'm done." MP Officer Michael Marciniak arrived and assisted in securing M.M., S.P., and John Doe.

Martin told Sergeant Carlson that "100% proof alcohol is a bitch man...that Southern Comfort." Sergeant Carlson observed multiple lacerations and cuts on Martin's arm and head.

14. The MPs took photographs of the broken front window, as well as the multiple bloodstains left by Martin as he went through the home. The MPs also took photographs of M.M.'s injuries, documenting bruising to her arms and head.

15. On October 12, 2018, the affiant and MP Investigator Jimmy Avens contacted Martin on base. The affiant asked Martin if he would be willing to drive over to the MP office to talk about the incident with his ex-wife. Martin agreed he would and he drove himself to the MP office. The affiant and Investigator Avens conducted a post-*Miranda* interview with Martin. Martin explained many of the details leading up to the assault. Martin admitted that he threatened to send photos of M.M., but then he backed down. Martin explained he began drinking and then walked over to M.M.'s residence. Martin called M.M. and told her he was pissed off at her. After M.M. hung-up, Martin stated he threw his phone through M.M.'s front window. Martin claimed he became a man possessed full of anger. Martin stated he recalled kicking in M.M.'s bedroom door and then going to the back of the residence. Martin explained that he does not recall everything, but he tried to hit S.P. because he was mad at her. Martin stated that M.M. and S.P. ran inside and he forced his way in so that he could get his phone. Martin said he then restrained M.M. and then let go so that he could find his phone. When the affiant asked Martin if he caused the marks on S.P. and M.M., Martin responded he did throw blows, but he was unsure if he made contact. Martin stated he was hitting with his fist. When asked if he choked M.M., Martin thought he might have done so once they were back inside the residence. Martin explained he was grabbing her, and the way she was positioned, his hands were around her throat. Martin was asked if he had ever hit M.M. before. Martin stated that in 2008, when M.M. got upset over something, he grabbed her, possibly

by the throat. Martin stated that in 2016 he jumped on her in a hotel room. Martin also admitted that he had struck his prior ex-wife, but that the police were never called.

16. Fort Leonard Wood United States Army Installation is property that is within the territorial jurisdiction of the United States.

## **CONCLUSION**

17. Based on the above facts, this affiant believes there is probable cause in support of a criminal complaint against Kerwin Omar Martin for violation of 18 U.S.C. § 113(a)(8), that is, assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate on the territorial jurisdiction of the United States

_____
James D. Holdman, Jr.
Special Agent
Homeland Security Investigations

Subscribed and sworn before me this 4th day of December, 2018.

_____
David P. Rush
United States Magistrate Judge
Western District of Missouri